## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| NING GU, Individually and on behalf of all others similarly situated, | Case No: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | **JURY TRIAL DEMANDED** |
| RCI HOSPITALITY HOLDINGS, INC., ERIC LANGAN, and PHILLIP MARSHALL, | |
| Defendants. | |

Plaintiff Ning Gu ("Plaintiff"), by Plaintiff's undersigned attorneys, individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding RCI Hospitality Holdings, Inc. ("RCI" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded RCI securities from August 10, 2017 through May 10, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants'

violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company's principal executive offices are located in this judicial district, the Company is incorporated in the State of Texas, and alleged misstatements and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification incorporated by reference herein, purchased RCI securities during the Class Period and was economically damaged thereby.

7.      Defendant RCI, through its subsidiaries, owns and operates gentlemen's clubs and restaurants in locations throughout the United States.  RCI is a Texas corporation and its principal executive offices are located at 10737 Cutten Road, Houston, TX 77066. RCI securities trade on the NASDAQ under the ticker symbol "RICK."

8. Defendant Eric Langan ("Langan") has been the Company's President, Chief Executive Officer ("CEO"), and Chairman since 1999 and a Director of the Company since 1998.

9. Defendant Phillip Marshall ("Marshall") has been the Company's Chief Financial Officer ("CFO") since May 2007.

10. Defendants Langan and Marshall are collectively referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

   a. directly participated in the management of the Company;

   b. was directly involved in the day-to-day operations of the Company at the highest levels;

   c. was privy to confidential proprietary information concerning the Company and its business and operations;

   d. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

   e. was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

   f. was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

   g. approved or ratified these statements in violation of the federal securities laws.

12. RCI is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to RCI under *respondeat superior* and agency principles.

14.    Defendant RCI and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

15.    On December 13, 2016, RCI filed a Form 10-K for the fiscal year ended September 30, 2016. The Form 10-K stated that the Company's internal controls over financial reporting were effective as of that fiscal year.  Concerning related party transactions, the Form 10-K stated:

> Our Board of Directors has adopted a policy that our business affairs will be conducted in all respects by standards applicable to publicly held corporations and that we will not enter into any future transactions and/or loans between us and our officers, directors and 5% shareholders unless the terms are no less favorable than could be obtained from independent, third parties and will be approved by a majority of our independent and disinterested directors.…We know of no related transactions for the years ended September 30, 2016 and 2015.

### Materially False and Misleading Statements Issued During the Class Period

16.    On August 9, 2017, after the market closed, RCI announced its results for its Fiscal 2017 third quarter ended June 30, 2017, stating in a press release:

**3Q17 Highlights (comparisons to 3Q16, unless otherwise noted)**

- Diluted EPS of $0.40 compared to $0.27, up 48.1%

- Non-GAAP* Diluted EPS of $0.47 compared to $0.34, up 38.2%

- Basic and diluted share counts fell 1.9% and 3.3%, respectively, due to previously announced share repurchases and retirement of convertible debt

- Total revenues of $37.4 million compared to $34.0 million, up 10.2% on 44 vs. 43 units

-  RCI now expects to exceed its original FY17 Free Cash Flow (FCF)* target of $18 million, which was based on estimated net cash provided by operating activities of ~$20.5 million

- The company also has established an initial FY18 FCF target of $21 million, which is based on estimated net cash provided by operating activities of ~$23.5 million

17.     On the same day, the Company filed a Form 10-Q for the Fiscal 2017 third quarter ended June 30, 2017 (the "3Q 2017 10-Q") with the SEC that confirmed RCI's announced financial results and stated that the Company's internal controls were effective as of that quarter.  The 3Q 2017 10-Q was signed by Defendants Langan and Marshall. The 3Q 2017 10-Q also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Langan and Marshall, attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

18.     Concerning related party transactions, the 3Q 2017 10-Q stated only that "[p]resently, our Chairman and President, Eric Langan, personally guarantees all of the commercial bank indebtedness of the Company. Mr. Langan receives no compensation or other direct financial benefit for any of the guarantees."

19.     On February 14, 2018, RCI announced its results for its Fiscal 2017 fourth quarter and 2017 Fiscal year ended September 30, 2017, stating in a press release:

**FY17 vs. FY16**

- Diluted EPS of $0.85 compared to $1.11, with non-GAAP* Diluted EPS at $1.43 compared to $1.32

- Basic and diluted share count declined 2.1% and 4.8%, respectively, due to previously announced share repurchases and retirement of convertible debt

- Total revenues of $144.9 million compared to $134.9 million

- Based on net cash provided by operating activities of $21.1 million, less maintenance capital expenditures of $1.8 million, FY17 free cash flow (FCF)* totaled $19.3 million, exceeding RCI's original target of $18 million

**FY18 Outlook**

- The RCI increased its FY18 FCF target by 9.5%, to $23 million from $21 million, based on estimated net cash provided by operating activities of approximately $25.5 million, less maintenance capex of approximately $2.5 million

- The target incorporates RCI's preliminary estimate of the impact of the new Tax Cuts and Jobs Act, which is expected to significantly reduce the company's estimated tax rate to approximately 23% starting in 2Q18 and result in a non-cash gain of approximately $10 million in 1Q18 due to lowering the rate on deferred taxes.

20.    On the same day, the Company filed a Form 10-K for the fiscal year ended September 30, 2017 (the "2017 10-K") with the SEC that confirmed RCI's announced financial results. The 2017 10-K was signed by Defendants Langan and Marshall. The 2017 10-K also contained signed certifications pursuant to SOX by Defendants Langan and Marshall, attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

21.    Concerning related party transactions, the 2017 10-K stated:

Presently, our Chairman and President, Eric Langan, personally guarantees all of the commercial bank indebtedness of the company. Mr. Langan receives no compensation or other direct financial benefit for any of the guarantees. Except for these guarantees, we know of no related transactions that have occurred since the beginning of the fiscal year ended September 30, 2017 or any currently proposed transactions in which we were or are to be a participant and the amount involved exceeds $120,000.

22.    On March 7, 2018, RCI announced its results for its Fiscal 2018 first quarter ended December 31, 2017, stating in a press release:

**1Q18 vs. 1Q17**

- GAAP EPS of $1.47 per diluted share compared to $0.30, with non-GAAP* EPS of $0.53 compared to $0.31

- 1Q18 GAAP results included $9.7 million non-cash reduction of deferred tax liability as a consequence of the new Tax Cuts and Jobs Act and $827 thousand in interest expense covering debt issuance costs and prepayment penalties related to the previously announced debt refinancing

- Total revenues of $41.2 million compared to $33.7 million on 45 and 41 units, respectively

- Basic and diluted share count declined 0.5% and 1.0%, respectively, due to previously announced share repurchases and retirement of convertible debt in prior periods

- Based on net cash provided by operating activities of $8.1 million, less maintenance capital expenditures of $0.6 million, free cash flow (FCF)* totaled $7.5 million compared to $5.1 million

**FY18 Outlook**

- RCI is maintaining its FY18 FCF target of $23 million, recently announced February 14, 2018

- The target incorporates RCI's preliminary estimate of the impact of the new Tax Cuts and Jobs Act, which is expected to significantly reduce the company's estimated tax rate

23.    On the same day, the Company filed a Form 10-Q for the Fiscal 2018 first quarter ended December 31, 2017 (the "1Q 2018 10-Q") with the SEC that confirmed RCI's announced financial results.  The 1Q 2018 10-Q was signed by Defendants Langan and Marshall. The 1Q 2018 10-Q also contained signed certifications pursuant to SOX by Defendants Langan and Marshall, attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

24.    Concerning related party transactions, the 1Q 2018 10-Q stated only that "[p]resently, our Chairman and President, Eric Langan, personally guarantees all of the commercial bank indebtedness of the Company. Mr. Langan receives no compensation or other direct financial benefit for any of the guarantees."

25.    On May 10, 2018, RCI announced its results for its Fiscal 2018 second quarter ended March 31, 2018, stating in a press release:

**2Q18 vs. 2Q17**

- GAAP EPS of $0.48 per diluted share compared to $0.39, with non-GAAP* EPS of $0.65 compared to $0.41.

- 2Q18 GAAP results included $1.6 million non-cash impairment of a note receivable and $0.8 million in cash settlements covering two lawsuits

- Total revenues of $41.2 million compared to $34.5 million on 43 and 41 units, respectively

- Based on net cash provided by operating activities of $5.9 million, less maintenance capital expenditures of $0.6 million, free cash flow (FCF)* totaled $5.3 million compared to $4.9 million

**FY18 Outlook**

- Year to date FCF totaled $12.8 million compared to $10.0 million in the comparable year-ago period

- As a result, RCI is reiterating its FY18 FCF target of $23 million, announced on February 14, 2018

26.     On the same day, the Company filed a Form 10-Q for the Fiscal 2018 second quarter ended March 31, 2018 (the "2Q 2018 10-Q") with the SEC that confirmed RCI's announced financial results. The 2Q 2018 10-Q was signed by Defendants Langan and Marshall. The 2Q 2018 10-Q also contained signed certifications pursuant to SOX by Defendants Langan and Marshall, attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

27.     The Company's related party transaction disclosure in the 2Q 2018 10-Q was identical to the disclosure in its 1Q 2018 10-Q.

28.     On August 9, 2018, RCI announced its results for its Fiscal 2018 third quarter ended June 30, 2018, stating in a press release:

**3Q18 vs. 3Q17**

- GAAP EPS of $0.55 per diluted share compared to $0.40, with non-GAAP* EPS of $0.58 compared to $0.47

- 3Q18 GAAP results included a $0.5 million pre-tax settlement of a lawsuit

- Record total revenues of $42.6 million compared to $37.4 million on 44 units in both periods

- Based on net cash provided by operating activities of $8.3 million, less maintenance capital expenditures of $0.6 million, free cash flow (FCF)* totaled $7.7 million compared to $6.6 million

**FY18 Outlook**

- Year to date FCF totaled $20.6 million compared to $16.6 million in the comparable year-ago period

- As a result, RCI expects to exceed its FY18 FCF target of $23 million

29.     On the same day, the Company filed a Form 10-Q for the Fiscal 2018 third quarter ended June 30, 2018 (the "3Q 2018 10-Q") with the SEC that confirmed RCI's announced financial results.  The 3Q 2018 10-Q was signed by Defendants Langan and Marshall. The 3Q 2018 10-Q also contained signed certifications pursuant to SOX by Defendants Langan and Marshall, attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

30.     The Company's related party transaction disclosure in the 3Q 2018 10-Q was identical to its disclosures in its 1Q 2018 10-Q and 2Q 2018 10-Q.

31.     On December 11, 2018, the Company filed a Form 12b-25 with the SEC stating that it could not timely file its Form 10-K for the fiscal year ended September 30, 2018 because "[t]he registrant has experienced delays in completing the audit of its financial statements for the year ended September 30, 2018."

32.     On this news, the Company's shares fell $1.37 per share or over 5.77% to close at $22.36 per share on December 12, 2018, damaging investors.  Trading volume on that date was unusually high.

33.     On December 31, 2018, RCI announced its results for its fourth fiscal quarter and fiscal year ended September 30, 2018, stating in a press release:

**4Q18 vs. 4Q17**

- Loss of $0.27 per share compared to a loss of $0.23

- Non-GAAP* profit of $0.41 per diluted share compared to $0.36

- GAAP results included $5.5 million in other charges compared to $6.2 million in 4Q17, mostly non-cash in both periods

- Free cash flow (FCF) totaled $2.7 million based on net cash provided by operating activities of $3.4 million, less maintenance capital expenditures of $0.7 million

- Total revenues of $40.7 million compared to $39.2 million on 43 and 45 units, respectively

**FY18 vs. FY17**

- Diluted EPS of $2.23 compared to $0.85

- Non-GAAP Diluted EPS of $2.18 compared to $1.43

- FCF totaled $23.2 million based on net cash provided by operating activities of $25.8 million, less maintenance capital expenditures of $2.5 million

- Total revenues of $165.7 million compared to $144.9 million

**FY19 Initial Outlook**

- FY19 is expected to benefit from, in addition to other factors, recent nightclub acquisitions in Chicago and Pittsburgh, the opening of additional Bombshells Restaurant & Bar locations in the Houston area, and the sale or lease of non-income producing properties.

34.    On the same day, the Company filed a Form 10-K for the fiscal year ended September 30, 2018 (the "2018 10-K") with the SEC that confirmed RCI's announced financial results. The 2018 10-K was signed by Defendants Langan and Marshall. The 2018 10-K also contained signed certifications pursuant to SOX by Defendants Langan and Marshall, attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

35.    Concerning related party transactions, the 2018 10-K stated:

Presently, our Chairman and President, Eric Langan, personally guarantees all of the commercial bank indebtedness of the company. Mr. Langan receives no compensation or other direct financial benefit for any of the guarantees.

In November 2018, we borrowed $500,000 from Ed Anakar, an employee of the Company and the brother of our director Nourdean Anakar. The note bears interest at the rate of 12% per annum and matures in November 2021. The note is payable in monthly installments of interest only with a balloon payment of all unpaid principal and interest due at maturity.

Except for these above transactions, we know of no related transactions that have occurred since the beginning of the fiscal year ended September 30, 2018 or any currently proposed transactions in which we were or are to be a participant and the amount involved exceeds $120,000.

36.    On February 11, 2019, RCI announced its results for its Fiscal 2019 first quarter

ended December 31, 2018, stating in a press release:

**1Q19 vs. 1Q18**

- Diluted EPS of $0.65 compared to $1.47

- Diluted Non-GAAP* EPS of $0.61 compared to $0.53

- 1Q19 GAAP results included $1.2 million pre-tax gain on the sale of three non-income producing assets and $447K pre-tax non-operating loss reflecting the implementation of a new accounting standard

- 1Q18 GAAP results included $9.7 million deferred tax credit due to the new tax law and $827K in interest expense for debt issuance costs write-off and prepayment penalties related to a bank refinancing

- Free cash flow (FCF) totaled $11.1 million based on net cash provided by operating activities of $11.5 million, less maintenance capital expenditures of $0.4 million

- Total revenues of $44.0 million compared to $41.2 million on 46 and 45 units, respectively

**Other News**

- RCI reactivated its share buyback program in line with its capital allocation strategy, acquiring 28,211 shares from October 2018 to January 2019 for $660,000, or an average price of $23.39
- A subsidiary sold another non-income producing asset for an estimated $383K pre-tax gain in late January

37.     On the same day, the Company filed a Form 10-Q for the Fiscal 2019 first quarter ended December 31, 2018 (the "1Q 2019 10-Q") with the SEC that confirmed RCI's announced financial results.  The 1Q 2019 10-Q was signed by Defendants Langan and Marshall. The 1Q 2019 10-Q also contained signed certifications pursuant to SOX by Defendants Langan and Marshall, attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

38.     Concerning related party transactions, the 1Q 2019 10-Q stated that

Presently, our Chairman and President, Eric Langan, personally guarantees all of the commercial bank indebtedness of the Company. Mr. Langan receives no compensation or other direct financial benefit for any of the guarantees.

Included in the $2.35 million borrowing on November 1, 2018 (see Note 6) was a $500,000 note borrowed from a related party. The terms of this related party note are similar to the rest of the lender group in the November 1, 2018 transaction.

39.     On March 1, 2019, the Company filed an amended 10-Q for the Fiscal 2019 first quarter, stating that it was re-filing its entire Form 10-Q with Section 302 Certifications that it revised "to conform with the requirements of Item 601 of Regulation S-K, including to correct the introductory section of paragraph 4 to include language that was inadvertently omitted."

40.     The statements referenced in Paragraphs 16-31 and 33-39 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) RCI engaged in numerous transactions with Langan, its CEO, including lending him large amounts of money; (2) these practices were likely to lead to investigations of RCI by regulators; (3) investigations into RCI's corporate governance would harm RCI's prospects by, among other things, causing it to be unable to timely file its financial statements; and (4) as a result, Defendants' statements about RCI's business,

operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## Disclosures at the End of the Class Period

41.     On May 10, 2019, the Company filed a Form 12b-25 with the SEC that stated it could not timely file its Form 10-Q for the Fiscal 2019 second quarter because of an ongoing SEC inquiry and internal review, stating in relevant part:

> In mid- and late 2018, a series of negative articles about the registrant was anonymously published in forums associated with the short-selling community. Subsequently in 2019, the SEC initiated an informal inquiry. In connection with these events, a special committee of the registrant's Audit Committee engaged independent outside counsel to conduct an internal review. The registrant and its management are cooperating with both the internal review and the SEC inquiry. Because the internal review is still ongoing, the registrant will be delayed in filing its Form 10-Q.

42.     On this news, the Company's shares fell $1.67 per share or over 7.5% to close at $20.48 per share on May 13, 2019, damaging investors. Trading volume on that date was unusually high.

43.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired RCI securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of RCI, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, RCI securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.      whether the Exchange Act was violated by Defendants' acts as alleged herein;

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of RCI;

c.      whether the Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d.      whether Defendants caused RCI to issue false and misleading SEC filings during the Class Period;

e.    whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

f.    whether the prices of RCI securities during the Class Period were artificially inflated because of defendants' conduct complained of herein; and

g.    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

50.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.    RCI shares met the requirements for listing, and were listed and actively traded NASDAQ, a highly efficient and automated market;

b.    As a public issuer, RCI filed periodic public reports with the SEC;

c.    RCI regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d.    RCI was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

51.     Based upon the foregoing, the market for RCI securities promptly digested current information regarding RCI from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I
### Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.      This Count is asserted against Defendants based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

55.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

a.     employed devices, schemes and artifices to defraud;

b.     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which

they were made, not misleading; or

c.      engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of RCI securities during the Class Period.

57.      Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of RCI were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of RCI, their control over, and/or receipt and/or modification of RCI's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning RCI, participated in the fraudulent scheme alleged herein.

58.      Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other RCI personnel to members of the investing public, including Plaintiff and the Class.

59.      As a result of the foregoing, the market price of RCI securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of RCI securities during the Class Period in purchasing RCI securities at prices

that were artificially inflated as a result of Defendants' false and misleading statements.

60.    Had Plaintiff and the other members of the Class been aware that the market price of RCI securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased RCI securities at the artificially inflated prices that they did, or at all.

61.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

62.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of RCI securities during the Class Period.

### COUNT II
#### Violations of Section 20(a) of the Exchange Act
#### Against the Individual Defendants

63.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.    During the Class Period, the Individual Defendants participated in the operation and management of RCI, and conducted and participated, directly and indirectly, in the conduct of RCI's business affairs. Because of their senior positions, they knew the adverse non-public information about RCI's corporate governance and business prospects.

65.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to RCI's business practices, and to correct promptly any public statements issued by RCI which had become materially false or misleading.

66.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which RCI disseminated in the marketplace during the Class Period concerning the Company's corporate governance and business prospects. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause RCI to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of RCI within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of RCI securities.

67.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by RCI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

A.    Declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

B.    Awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

C.    Awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: May 28, 2019                    Respectfully submitted,

**STECKLER GRESHAM COCHRAN PLLC**

/s/ R. Dean Gresham
R. Dean Gresham
Texas Bar No. 24027215
12720 Hillcrest Rd, Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
Email: dean@stecklerlaw.com

-and-

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (not admitted)
Laurence M. Rosen, Esq. (not admitted)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

Counsel for Plaintiff

# EXHIBIT A

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against RCI Hospitality Holdings, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The RCI Hospitality Holdings, Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

**First name:**      Ning
**Middle initial:**
**Last name:**       Gu
**Entity:**
**Title:**
**Address:**                    REDACTED
**City:**
**State:**
**Zip:**
**Country:**
**Facsimile:**
**Phone:**
**Email:**

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 11/17/2017 | 70 | 30.9839 |

7. I have not served as a representative party on behalf of a class under the federal securities laws during the last three years, except if detailed below. [ ]

**Certification for Ning Gu (cont.)**

I declare under penalty of perjury, under the laws of the
United States, that the information entered is accurate:          **YES**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.          **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform
Electronic Transactions Act as adopted by the various states and territories of the
United States.

Date of signing: 05/24/2019